NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 14, 2008[*]
Decided May 15, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

JOHN L. COFFEY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 07-3670

| | |
|---|---|
| TAYR KILAAB AL GHASHIYAH, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 01-C-010 |
| JON E. LITSCHER, et al., | |
| *Defendants-Appellees.* | Lynn Adelman, |
| | *Judge.* |

**O R D E R**

In 2001 Wisconsin prisoner Tayr Kilaab al Ghashiyah, a Muslim who legally changed his name from John Casteel twenty years ago, sued the Wisconsin Department of Corrections (DOC) and several of its officials under 42 U.S.C. § 1983, alleging that they violated his rights by denying him religious property, refusing to accommodate his religious dietary restrictions, and refusing to allow him to use his legal name, all at several

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

different prisons over a span of 11 years.  Ghashiyah appeals from the district court's award of summary judgment to the defendants.   For the following reasons, we affirm.

John Casteel identified his religion as "Mormon" when he entered the Wisconsin prison system.  In 1988 Casteel legally changed his name to "Tayr Kilaab al Ghashiyah," and it appears that since at least that time he has maintained that he is a Muslim.  "Tayr Kilaab al Ghashiyah" translates roughly to "Bird Dog the Overwhelming."

Initially, the DOC prohibited Ghashiyah from using his new name because, under its policy, he could use only the name that appeared on his judgment of conviction.  To use his new legal name, the defendants maintained, the judgment of conviction would have to be amended, but it does not appear that it ever was.  In March 2000 the DOC reversed course and began allowing Ghashiyah to use his new name so long as there was also a reference to "Casteel" and his DOC number.  And beginning in April 2005, the DOC permitted him to use his full legal name without reference to "Casteel" for mail, visits, and business.

Ghashiyah exhausted three grievances about the use of his legal name.  Two implicate Gary McCaughtry, warden of the Waupun Correctional Institution.  McCaughtry dismissed Ghashiyah's grievances that the prison had crossed off his legal name on an envelope addressed to "Mr. Tayr Kilaab al Ghashiyah f/n/a John Casteel" and that legal documents addressed to "Tayr Kilaab al Ghashiyah" had been returned to their sender.  The grievances were dismissed because Ghashiyah failed to provide documentation of his name change.  The third exhausted grievance involved Daniel Bertrand, warden of the Green Bay Correctional Institution.  Bertrand affirmed the dismissal of an inmate complaint that Ghashiyah was not permitted to send letters from "Tayr Kilaab/Casteel" (Ghashiyah's "dual name").

Ghashiyah also exhausted two claims regarding problems that he had obtaining food that would not conflict with his religious beliefs.  Judy Smith, warden of the Oshkosh Correctional Institution, dismissed Ghashiyah's complaint that "kosher" meat was not available there and that pots and utensils that had been used to cook pork were used in the kitchen.  Kenneth Morgan, warden of the Racine Correctional Institution, similarly dismissed Ghashiyah's grievance that the kitchen there served pork and that other foods were exposed to pork or to kitchenware that had come in contact with pork.

The defendants presented evidence from Ronald Beyah, a scholar of Islam, that although the Qu'ran prohibits consumption of pork and pork by-products, Muslims confined in prison are not forbidden from eating meat that is not halal, so long as it is not pork.  And because Muslims are not required to eat meat at all, a vegetarian diet would be consistent with the tenets of Islam.  According to the defendants, prisoners who have gone

through the appropriate channels (which Ghashiyah did not do) may "self-select" among the food provided on the general menu or choose a vegan diet. The defendants contend that it would be expensive to maintain separate kitchenware for pork and non-pork items and that such an accommodation may pose a security risk by allowing prisoners to congregate by dietary preference. Ghashiyah nevertheless maintains that Jewish prisoners were provided with kosher meals and that he was not provided with halal meat. The defendants, however, presented evidence that kosher meals were not provided at the Oshkosh or Racine correctional institutions while Ghashiyah was housed there.

Ghashiyah also contends that use of oil, incense, and candles are an important part of his religious observance. But the defendants' expert stated in an affidavit that these items are not required for Islamic worship. They are generally prohibited to prisoners, although Native American prisoners are permitted to burn sage and smoke sacrament in their cells. Between 1990 and 2001 Ghashiyah made several complaints regarding religious property. In particular, Ghashiyah complained that a prayer rug (for which he was reimbursed) was confiscated, that he was denied the use of prayer oil, and that he was denied access to religious property while in segregation. The defendants stated that the prisons limit the amount of personal property of prisoners because it allows for quicker searches, prevents fires, and reduces the prisoners' opportunities to make weapons, barter, hide contraband, and display gang affiliations. Muslims in segregation are allowed a prayer rug, texts, and a kufi cap. According to the defendants, smoking and burning are fire hazards, and permitting prisoners to possess oil could make physically restraining or moving them against their will dangerous for the staff.

Ghashiyah filed suit in federal court raising three categories of claims—those regarding his religious property, his name change, and his religious diet—under a variety of legal theories, including the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5. The district court disposed of those claims in several stages, each time writing a comprehensive order discussing each claim. The district court held that the religious-property claims failed because the requirement that Ghashiyah file a religious-preference form—which he failed to do—did not substantially burden the free exercise of his religion. The court also dismissed some of the religious-diet claims on grounds of qualified immunity and denied relief on the rest because Ghashiyah failed to show that Muslims were treated differently than adherents of other religions, and, at any rate, the defendants' actions were based on legitimate penological interests. The court denied Ghashiyah's religious-name claims because there was no substantial burden on Ghashiyah's free exercise of his religion and no knowing deprivation of any constitutional right. Finally, the district court denied Ghashiyah's motion for costs.

Ghashiyah raises a host of issues on appeal, but they can be grouped into just a few specific arguments. He first contends that the district court applied its local rules selectively, disregarding the defendants' failure to respond to one set of his proposed findings of fact while treating another set of the defendant's proposed facts as admitted, despite his response. But the district court could not have accepted Ghashiyah's propositions as undisputed facts because they contained no facts—only arguments, conclusions, and assertions lacking personal knowledge. As such, they could not have formed a basis for summary judgment. *See* FED. R. CIV. P. 56(e)(2); *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). And the district court was entitled to treat the defendants' proposed facts as undisputed when Ghashiyah failed to identify by paragraph number the defendants' proposed findings that he disputed—the manner prescribed by the Eastern District of Wisconsin Civil Local Rule 56.2(b)(1). *See FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Ghashiyah's status as a pro se litigant is of no help to him here—the district court ensured that he was made aware of how he needed to respond and the consequences of failing to do so. *See Houston v. Sidley & Austin*, 185 F.3d 837, 838 n.1 (7th Cir. 1999).

Ghashiyah next argues that the district court incorrectly concluded that he failed to exhaust his administrative remedies for certain claims regarding his diet and name. Ghashiyah does not contend that he exhausted his remedies but instead maintains that because he "substantially complied" with prison grievance procedures prior to the enactment of the Prison Litigation Reform Act, those claims are exempt from its requirements. *See McCoy v. Gilbert*, 270 F.3d 503, 512 (7th Cir. 2001). But Ghashiyah has not pointed to any evidence of substantial compliance that would have given the prison "notice of his particular demands and reasonably triggered an attempt to resolve them," *see id.*, and so he has failed to carry his burden of production, *see* FED. R. CIV. P. 56(e); *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008).

Ghashiyah next suggests that there are genuine issues of material fact that should have prevented the district court from awarding summary judgment to the defendants on his religious-name claims. He contends that the defendants' failure to allow him to use his legal name when filing grievances and using the mail system violates his First Amendment right to free exercise of religion. The district court correctly dismissed the two claims against Warden McCaughtry because the undisputed facts showed that he was not aware that Ghashiyah had changed his name, and thus McCaughtry could not have "'knowingly, willfully, or at least recklessly' caused a deprivation of his First Amendment rights." *See Jacobsen v. Ill. Dep't of Transp.*, 419 F.3d 642, 649 (7th Cir. 2005) (quoting *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)). The court also correctly granted summary judgment to Warden Bertrand, who had dismissed a grievance regarding Ghashiyah's use of his "dual name" when sending mail, because Ghashiyah presented no evidence to dispute the

defendants' contention that requiring outgoing mail to bear the sender's name of conviction furthered prison order. *See Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974), *abrogated in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *see also Koutnik v. Brown*, 456 F.3d 777, 784-86 (7th Cir. 2006).

Ghashiyah challenges the district court's grant of summary judgment on his religious-property claims as well. Although his argument is difficult to follow, he appears to be contesting the district court's dismissal of those claims under the RLUIPA. But the RLUIPA prohibits only the imposition of a "substantial burden" on Ghashiyah's religious exercise, and his argument his religious practice was substantially burdened by the requirement that he fill out a form to obtain religious property is frivolous.

Ghashiyah next contends that summary judgment should not have been granted to the defendants on his religious-diet claims. Here, though, Ghashiyah appears to contend not that there are genuine issues of fact to be resolved but that summary judgment should have been entered in his favor. This argument must fail as well. As the district court noted, Ghashiyah failed to present any evidence that he was treated differently from other inmates of a different religion with dietary restrictions during the relevant time frame. *See May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). But even if he had, Ghashiyah failed to adduce any evidence rebutting the defendants' evidence that their actions were reasonably related to legitimate penological interests—expense and security. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Hammer v. Ashcroft*, 512 F.3d 961, 967-68 (7th Cir. 2008).

Finally, Ghashiyah believes that the district court should have awarded him costs, but because he is not the prevailing party, the court correctly declined to do so. *See* FED. R. CIV. P. 54(d)(1). We have reviewed the remainder of Ghashiyah's many contentions and conclude that they are all meritless.

AFFIRMED.