NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 6, 2022*
Decided May 16, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 21-2241

| | |
|---|---|
| BRANDON ROBERTS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 21-C-371 |
| | |
| JACK L. MARCUS COMPANY, et al., | William C. Griesbach, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

     Brandon Roberts, who calls himself a Massachusetts prisoner housed in Maryland, filed a federal complaint in the Eastern District of Wisconsin suing a Milwaukee-based catalog company and its employee, as well as Maryland prison staff. He alleged that the vendor refused to send some items he tried to order and that the

---

     * The appellees were not served with process and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

prison punished him for threatening to sue the vendor. Initially, the district court dismissed the complaint "without prejudice" because Roberts failed to pay the filing fee or submit records of his prison trust account under 28 U.S.C. § 1915(a), (b). On Roberts's motion to reconsider, however, the judge instead concluded that Roberts could not proceed because the complaint failed to state a federal claim. We affirm.

According to the complaint, in April 2016 Roberts tried to order a toothbrush and other items from Jack Marcus, an approved mail-order vendor from the prison where he was housed. (The full name of the business is not readily available to us.) He alleges that he arranged for a bank outside the prison to send Jack Marcus a $19 check on his behalf, yet the vendor never sent him the items. Whether the check was cashed is unclear from the complaint. In any event, a Jack Marcus employee explained to Roberts that the company would not accept private checks from outside the prison; the payment needed to be sent directly from the prison. The complaint goes on to assert in very general terms that Roberts threatened to sue the Jack Marcus employee, who told someone at the prison about the threat, and that prison staff "retaliated" by wrongly placing Roberts in segregation. In March 2021 he filed this suit in the Eastern District of Wisconsin.

At screening the judge directed Roberts to either pay the filing fee or submit a certified trust-account statement and a motion to proceed *in forma pauperis*. *See* § 1915(a), (b). Roberts, however, sent a motion without the required account statement. The judge therefore dismissed Roberts's complaint, albeit without prejudice to refiling it if he cleared up his fee status. Roberts moved to reopen his case 24 days later, explaining that he could not currently obtain an account statement because the responsible prison official was absent from work. In response the judge issued an order opining that on further inspection exploring Roberts's funds was unnecessary because he had not stated a claim upon which relief could be granted. *See* 28 U.S.C. § 1915A(b)(1). Roberts timely appealed.

At the outset we note that although the judge's first order was marked "without prejudice" to refiling in that court or another, the second order is functionally final and appealable. That second order, far from inviting further proceedings, suggests that the judge thought he was done with the case. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1020 (7th Cir. 2013). Meanwhile, orders denying leave to proceed *in forma pauperis* are appealable. *Turley v. Gaetz*, 625 F.3d 1005, 1007 n.3 (7th Cir. 2010). And the three-year statute of limitations for claims under 42 U.S.C. § 1983 against the Maryland defendants likely had expired before the complaint's 2021 filing. *See* MD. CODE ANN.,

CTS. & JUD. PROC. § 5-101; *Thomas v. Butts*, 745 F.3d 309, 311 (7th Cir. 2014) (noting role of limitation period in determining finality of decision).

With our appellate jurisdiction secure, we turn to Roberts's appellate argument: that he deserved at least one opportunity to amend his complaint before final dismissal. *See Luevano*, 722 F.3d at 1024–25 (observing that plaintiffs are entitled to an opportunity to amend defective complaints). In support he appends to his brief a longer version of his complaint. *See County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819–20 (7th Cir. 2006). But the proposed second complaint itself would not survive screening, so Roberts is not entitled to a remand.

To start, Roberts does not state a § 1983 claim against the vendor and its employee because he does not plausibly allege that they acted under color of state law. Only government actors, or private actors performing traditionally exclusive government functions, are subject to suit under § 1983. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928–29 (2019); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815–16 (7th Cir. 2009). Agreeing to join the pool of private vendors selling mail-order goods to prisoners does not transform those vendors into government actors when they transact with prisoners.

Roberts adds that in his view the vendor's refusal to complete his order and the employee's decision to alert the prison to the attempted $19 sale violated some aspect of federal consumer law. But he cites no pertinent authority on this point, and we are aware of none. And there would be no diversity jurisdiction over any *state*-law claim because Roberts offers no reason to think at least $75,000—as opposed to $19—is in controversy between him and the Wisconsin-based defendants. *See* 28 U.S.C. § 1332.

That leaves Roberts's (now expanded) allegations that the named Maryland prison officials unconstitutionally retaliated against him for telling the vendor he would seek access to the courts and that they denied him due process when various prison staff searched him, placed him in segregation, and damaged his property. For these allegations we need not resolve our doubts about a Wisconsin-based court's personal jurisdiction over the Maryland defendants, let alone Maryland's three-year statute of limitations, because the complaint appended to Roberts's appellate brief still does not state a plausible claim for relief against any specific Maryland defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

The allegations do not specify what each defendant did wrong and do not show a decision by any defendant to punish Roberts for exercising First Amendment rights. He now says that two of the defendants ordered him to be "arrested" for reasons then unknown to him, that he was removed from his cell before someone strip-searched him, that he was placed in administrative segregation, and that a prison official in "case management" later told him his placement in segregation had something to do with his interaction with the vendor and its employee. He does not allege that the named defendants themselves made the decision to strip-search him or place him in segregation, nor that they even knew about Roberts's threat to the Jack Marcus employee. Roberts does identify one of the named defendants as a case-management supervisor, but he does not say that this person had a hand in any of the alleged misconduct or was even the case manager with whom he spoke. This does not state a plausible claim that these Maryland defendants chose to retaliate against Roberts for seeking to access the courts. *See Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). And regarding his due-process theory, Roberts does not describe the process that he did receive or what process he should have received from the named defendants—aside from his assertion that the searches, property damage, and segregation were nothing but punishment, by someone, for his threat to sue the Jack Marcus employee.

Finally, Roberts adds an allegation that the Maryland defendants somehow conspired to use the system of prison trust accounts and outside vendors to obtain "kickbacks" and illicit profits. But this allegation does not meet *Twombly*'s plausibility standard for claims of conspiracy. *See* 550 U.S. at 557; *cf.* FED. R. CIV. P. 9(b) (allegations of fraud must be pleaded with specificity).

AFFIRMED